reference thereto by Reed, or any one else, until this suit was commenced.

The decree should be affirmed.          AFFIRMED.

Argued 14 February, decided 10 April, 1905.
**RYAN v. GALVIN.**
80 Pac. 421.

COSTS IN EQUITY CASES ARE DISCRETIONARY.
Under Section 566, B. & C. Comp., the allowance of costs and disbursements in equity cases on appeal is discretionary.

From Multnomah: MELVIN C. GEORGE, Judge.

Suit by Matthew Ryan against Michael and Ellen Galvin, resulting in a decree, from which defendants appeal.

AFFIRMED.

For appellants there was a brief with an oral argument by *Mr. James Hennessy Murphy* and *Mr. Frank Schlegel.*

For respondent there was a brief and an oral argument by *Mr. James Gleason.*

PER CURIAM. On August 11, 1902, the plaintiff on one part, and the defendants on the other, entered into a written contract, whereby the defendants, in consideration that the plaintiff would execute and deliver to them his deed to lot 8, in block 18, in the City of Portland, Oregon, the same not to become effective until his death, agreed to provide for plaintiff a home with them during his life, to furnish him board, lodging, and comfortable clothing, to do his washing and mending whenever required by him, and when dead, to see that he was given a Christian burial; also to erect within five years a monument to the memory of Ellen Ryan, the deceased wife of plaintiff, at a cost of $300, and place about it an artificial stone coping at an additional cost not to exceed $30; but it was stipulated that in case the plaintiff was able to work or could obtain the money, then that he should erect the monument and coping at his own expense. It was further agreed that plaintiff should allow the defendants to occupy the premises designated as No. 356 Sacramento Street, on said lot 8, rent free until his death, when the defendants should become the owners of the entire lot by virtue of the deed aforementioned.

Then follows this stipulation, which very well characterizes the agreement:

"Matthew Ryan, the party of the second part, wants the parties of the first part to act as his custodians of his money, rents, or money he may earn by work, when he wants to give Mrs. Ellen Galvin his money to keep for him; but he should always like to have given to him a dollar or so when he needs it. The rent of house No. 354 Sacramento Street he will collect himself, and he wants the privilege of working at any work he may get and collecting his own wages. He also agrees to pay the taxes on the two houses and lot 8 in block 18, and the insurance on the houses while he has an income; but should he fail to have an income by rent or work, the parties of the first part will have to pay taxes and insurance rates."

The deed to the lot was executed and delivered by Ryan to the defendants concurrently with the signing of the contract. It is in the usual form of a warranty deed, except that it contains a provision that it shall not operate to take effect until after the death of the plaintiff. The purpose of the present suit is to obtain a cancellation of both these instruments, on the ground of a failure on the part of defendants to observe the conditions of the contract in furnishing plaintiff with a home, board, etc. A brief narrative of the events leading up to the negotiations and of those which followed will sufficiently indicate the situation.

The plaintiff is a laboring man about 57 years of age, illiterate, and without business experience. He accumulated the means with which to purchase the property in question from wages earned at common labor, such as hod carrying, digging, shoveling, and the like and it cost him in the neighborhood of $1,800. After the death of his wife, which occurred about the first of the year 1902, he made his home with a neighbor, but, owing to some trouble in the family, he was required to change his place of abode, and then went to live with the defendants, they residing at the time on Grand Avenue. This was about June 21st, and he continued to make his home with them at an agreed rate of four dollars per week for his board and lodging, not including his washing, until August 11th, the date when the agreement was signed. There is some dispute as to whether the negotiations resulting in the present agreement were really

begun before the first arrangement was made for board and lodging, but, however this may be, it is clear that steps were taken by plaintiff prior to its final consummation to have one of his houses vacated, he having two upon the lot in question, so that defendants might occupy it. Provisionary to taking possession, defendants, with the concurrence of plaintiff, built an addition to the house, and made other improvements at large expense, and their subsequent occupancy has been in pursuance of the agreement. Just when this began is not definitely stated, but it must have been before the 1st of September. Under their new relations plaintiff continued with them for nearly 13 months, when he left, and refused further to be bound by the agreement. He complains that after the lapse of some five or six months the defendants began treating him badly, and with contempt and contumely; that they did many things to harass and annoy him, and to make their house disagreeable and unpleasant for him, and manifested such a perversity of disposition towards him as to cause him to feel that it was not at all agreeable to them for him to be about, and eventually compelled him to quit their abode and to seek a home elsewhere. There is pertinent evidence in the record to support this charge. The husband said to him at one time, "You savage, I own that place now; I can do as I like with it"; and spoke harshly to him at other times, while the wife treated him coolly and disdainfully, evincing much displeasure and disgust in having him about. The defendants protest, on the other hand, that they did everything they could within reason to make their home pleasant and agreeable for him, and that they have complied in every particular with their stipulations under the agreement; but that the plaintiff by his own conduct, through hard drinking, has made it difficult to care for him, and that his discontent is the result of his own acts, and not theirs.

With all this, however, one thing is very certain: that is, that the differences between the plaintiff and defendants are wholly irreconcilable, and that plaintiff would not again be content to live with them, whatever they might do for him. The plaintiff further complains that defendants were not to record the deed until his death, but that, in violation of their promise to that

effect, they procured it to be placed on record March 31, 1903. The defendants deny the arrangement, and allege that it was recorded in pursuance of legal advice and for their own protection. We are satisfied from the fact that the deed was not recorded at once upon its execution and delivery that plaintiff's understanding is the correct one. The breach, however, would not alone warrant the relief sought, and only becomes important for consideration in connection with the other matters of misunderstanding between the parties. He also complains that the agreement was not drawn as the parties had previously understood that it should be, but in this he is not sustained by the evidence.

We are impressed that plaintiff's own conduct has had much to do with his discontent, and that he cannot be held blameless for the state of the differences we find existing between him and the defendants; but, while this is true, the defendants have no doubt made their home unpleasant for him both by word and act, and have contributed in no small measure to his dissatisfaction. Perhaps their conduct in that particular, in view of the provocations of the plaintiff, is not sufficient of itself to warrant the relief sought; but in further consideration that he was ignorant and unfamiliar with business affairs; that at the time the contract was entered into he was in distress on account of the recent loss of his wife; that he was apprehensive that he might some time go to the poorhouse; that the contract itself is unusual of its kind, as being made between strangers, without ties of blood or kindred, and is a hard one for the plaintiff—we are impelled to the conclusion that he ought to be permanently relieved of the situation, while at the same time the defendants ought to be placed in statu quo so fully that they shall lose nothing by the unfortunate arrangement. The decree of the circuit court is adequate to the purpose in both particulars, and will therefore be affirmed. Neither party to the appeal is entitled to costs and disbursements in this court.        AFFIRMED.